UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| WYNSTON DAY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No.: 16-cv-1272-JES |
| | ) |
| LT. SKEENS, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff, proceeding *pro se*, alleged deliberate indifference to his serious medical needs at the Pontiac Correctional Center ("Pontiac") by Defendants Kristina Skeens, Matthew Hubert, David Lindsay and Rosendo Torrez ("IDOC Defendants"), and Patricia Brady, a Mental Health Professional ("MHP") and crisis team member. Plaintiff has filed a Motion for Summary Judgment [ECF 79], as have IDOC Defendants Skeens, Hubert, Lindsay and Torrez [ECF 84], and Defendant Brady [ECF 90]. The parties have filed responses and replies to the others' Motions, which have all been considered by the Court. For the reasons indicated herein: Plaintiff's Motion for Summary Judgment [ECF 79] is DENIED; Defendants Skeens, Hubert, Lindsay and Torrez's Motion for Summary Judgment [ECF 84] is DENIED; and Defendant Brady's Motion for Summary Judgment [ECF 90] is GRANTED.

## MATERIAL FACTS

Plaintiff alleges that on March 21, 2016, he became suicidal due to sleep deprivation caused by a disruptive inmate. Plaintiff did not disclose he was held at the time, but Defendants have identified Plaintiff as having been in a segregation cell on 10 Gallery of the West Cell House. On the day in question, between 9:00 and 10:00, Plaintiff was moved from that cell after allegedly spitting on an inmate in an adjoining cell. He was taken to a holding cell while officers

attempted to find other placement for him.  Plaintiff claims that while in the holding cell, he asked Officers Tutoky and Klitzing, not parties, to call a crisis team member to see him.  Plaintiff claims, without elaboration, that this request was relayed to Defendant Skeens by Officer Klitzing.  Defendant Skeens allegedly responded by stating that she did not care if Plaintiff killed himself.  Plaintiff testified at his deposition that while in the holding cell, he also told Defendants Hubert and Lindsay that he was suicidal, and asked that they call a crisis team member.

It appears that the holding cell was in close proximity to a room where Defendant Brady, an MHP crisis team member, met with patients.  Plaintiff asserts that Defendant Brady knew he had asked for a crisis team member as he saw an unidentified officer speaking with her and believes Defendant Hubert had directed the officer to tell Brady of his request.  Plaintiff does not claim, however, that he heard the conversation between the unidentified officer and Defendant Brady.  The IDOC Defendants deny that Plaintiff requested a crisis team member and deny speaking with Defendant Brady, or directing another to speak with Defendant Brady, in this regard.  Defendant Skeens and non-party officer Tutoky have provided affidavits attesting that Plaintiff made no threats of suicide or request for a crisis team member on the day in question.

Plaintiff alleges that when he asked to be seen by Defendant Brady, he was told he would have to wait as she was with another inmate.  Plaintiff was able to view Defendant Brady in a room with another individual and, on two occasions, saw her leave the room to speak on the phone.  Plaintiff alleges that he yelled out to Defendant Brady, who was about 15 feet away, though he could not recall whether he told her he was suicidal or merely that he wanted to be seen by a crisis team member.  Plaintiff claims that Defendant Brady ignored him.  Defendant Brady denies that the event occurred.  Plaintiff claims that, after he had waited for about 45 minutes,

Defendant Skeens ordered him transported to the 1 Gallery cell, even though he had not received any mental health intervention.

Defendants Hubert, Lindsey and Torrez moved Plaintiff to the new cell with Defendant Skeens accompanying them, allegedly pushing Plaintiff from behind. Plaintiff claims that he loudly proclaimed his suicidal intent while being transported to 1 Gallery, and provides that affidavits of inmates Tyshon Reed and Richard Kelly to corroborate this. Plaintiff alleges that despite these threats, he was left alone in the cell. Within 20 minutes of being placed there, Plaintiff fashioned a noose from him prison jumpsuit and attempted to hang himself. The noose apparently gave way, causing Plaintiff to fall to the floor. When Plaintiff attempted to stand, he became dizzy and passed out.

Defendant Hubert and Officer Tutoky arrived at Plaintiff's 1 Gallery cell, bringing his property from 10 Gallery, and found him lying on the bed with a noose around his neck, not responding to their commands. Defendant Skeens was called and Plaintiff was escorted to a holding cell. The mental health record documents that at 12:30 p.m., Defendant Brady was called to the West Cell House to see Plaintiff. Defendant noted the suicide attempt, and the patient's complaints of being depressed. She placed Plaintiff on a 10 minute suicide watch, ordering that he have only a smock and blanket in the cell, and noted that Plaintiff had been seen by medical personnel.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

A party opposing a properly supported motion for summary judgment, must cite to particular parts of the record or show that the materials cited by the movant do not establish the absence of a genuine dispute. *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence in support of the non-movant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

## EIGHTH AMENDMENT STANDARD

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on a claim of inadequate medical care, an inmate must show that the prison official was objectively aware of the prisoner's serious medical condition, and deliberately indifferent to that condition." *Arnett v.Webster*, 658 F.3d 742, 750 (7th Cir. 2011). In cases of suicide or attempted suicide, "it goes without saying that suicide is a serious harm." *Smith v. Alvarez*, 898 F. Supp. 2d 1057, 1064 (N.D. Ill. 2012) quoting *Collins v.*

4

*Seeman,* 462 F.3d 757, 761 (7th Cir.2006). Still, Plaintiff must establish that defendant subjectively knew that he was at substantial risk of committing suicide, and intentionally disregarded that risk. "With respect to the first showing, 'it is not enough that there was a danger of which a prison official should have been aware,' rather, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith*, 898 F. Supp. 2d at 1064-65, citing *Estate of Novack ex rel. Turbin v. County of Wood,* 226 F.3d 525, 529 (7th Cir.2000). "In other words, the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Smith*, 898 F. Supp. 2d at 1065.

**Plaintiff's Motion for Summary Judgment [ECF 79]**

Plaintiff asserts that on March 21, 2016, he was openly suicidal and that all Defendants denied him appropriate mental health intervention, leading to the suicide attempt. The IDOC Defendants dispute this, asserting that Plaintiff did not request mental health intervention and they had no notice of any suicidal ideation until Plaintiff made the attempt to hang himself.

Defendant Skeens has provided affidavit testimony that at approximately 10:00 a.m. on March 21, 2016, she ordered Plaintiff moved to 1 Gallery after he was observed spitting on another inmate. Defendant Skeens avers that the transfer to 1 Gallery went without incident, and that Plaintiff did not request a crisis team or claim to be suicidal. Defendant asserts, further, that neither Officer Klitzing nor the other officers moving Plaintiff, told her of any request for a crisis team member. Defendant does not include any reference to Plaintiff being placed in a holding cell, immediately prior to the transfer to 1 Gallery.

Defendant attests that later that day, around noon, she learned that Plaintiff had been found unconscious in the 1 Gallery cell, after attempting to hang himself. She arrived at the cell

5

and ordered Defendants Hubert and Torrez, as well as Officers Roe and Tutoky to secure Plaintiff, and move him to a West Cell House holding cell. Plaintiff was moved between 12:00 and 12:25 p.m. and Defendant Brady was called to evaluate and treat him.

As noted, Plaintiff claims that he made multiple requests for mental health intervention to the IDOC Defendants in the holding cell and during the transfer to 1 Gallery. Plaintiff references the affidavit testimony of inmates Tyshon Reed and Richard Kelly, as attached to his amended complaint. Tyshon Reed's sworn affidavit attests that on March 21, 2016, he was in cell #120 in the West Cell House. At 10:00 or 11:00 a.m., he heard an inmate yell "I'm suicidal. You can't deny me a crisis team." Mr. Reed states that he saw Plaintiff being rushed passed his cell [apparently on the way to 1 Gallery], by Defendants Skeen, Lindsay, Torrez and Hubert, while yelling "I'm going to kill myself." Mr. Reed asserts that Plaintiff was subsequently placed in a cell of which Mr. Reed "had no knowledge." [ECF 15-1 p. 7].

Inmate Richard Kelly has provided a sworn affidavit asserting that he was housed in cell #105 in the West Cell House when he saw Defendants Skeen, Hubert, Lindsay and Torrez push Plaintiff down the hall. He claims that Plaintiff was loudly stating "I need to see a crisis tem. I'm suicidal!" Mr. Kelly claims to be aware that Plaintiff was placed on 1 Gallery and not allowed to see a crisis team member. It is unclear whether inmate Kelly was able to see Plaintiff both while he was transported to 1 Gallery and while on 1 Gallery. As a result, the extent of inmate Kelly's personal knowledge of the events is unclear. There is a further issue in that Mr. Kelly identifies the events as having occurred on March 31, 2016, rather than March 21, 2016, as alleged by Plaintiff.

Plaintiff asserts that the affidavits of Tyshon Reed and Richard Kelly establish as a material issue of fact that the IDOC Defendants were aware of his suicidal ideation and

6

deliberately indifferent in the face of it. This testimony, however, is challenged by the affidavits of Defendant Skeens and Officer Tutoky, offered to establish that Defendants were unaware of Plaintiff's threats of suicide or requests for a crisis team member. Defendant Skeens' affidavit is particularly relevant as she refutes Plaintiff's claims that she was aware of his threats, both while he was in the holding cell and while transported to 1 Gallery. Here, there is clearly conflicting affidavit testimony sufficient to identify a material issue of fact to be determined by a jury. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Plaintiff's Motion for Summary Judgment as to the IDOC Defendants [ECF 79], is DENIED.

Defendant Brady responds to Plaintiff's motion asserting that he has failed to identify facts to establish that she was deliberately indifferent to him. Defendant claims that she had no prior knowledge of a crisis team request, and did not know he was suicidal until she was called to see him at 12:30 p.m. that day. Defendant asserts that, while Plaintiff claims to have yelled out to her when he was in the holding area, he is unclear as to what he said and fails to demonstrate that she was aware of the risk of suicide. The Court finds that this is enough to identify a material dispute to forestall summary judgment in Plaintiff's favor. Plaintiff's motion for summary judgment as to Defendant Brady is DENIED.

**IDOC Defendants' Motion for Summary Judgment [ECF 84]**

The IDOC Defendants assert that Plaintiff has failed to identify, as a material issue of fact, that they were subjectively aware that he would attempt suicide. In support of their motion, Defendants Skeen, Hubert, Lindsay and Torrez have cited several inmate suicide cases where the inmate had not presented with obvious signs of suicide risk and defendants were granted summary judgment. *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 555 (7th Cir. 2003); *Minix v.*

7

*Canarecci*, 597 F.3d 824, 829 (7th Cir. 2010). In *Matos*, the decedent was regularly seen by the facility physician and referred to a mental health professional, all the while denying suicidal ideation. In this case, if we take Plaintiff at his word, as we must as he is the non-moving party, he loudly proclaimed his suicidal ideation to all around him. He additionally, provided the affidavits of two independent inmate witnesses attesting to this, though one of the affidavits contains a material error which goes to its weight and reliability.

Defendants make the further claim that they could not have been aware of the suicide risk as they did not have notice of Plaintiff's mental health history. This argument fails, however, as Plaintiff alleges that he clearly and repeatedly told Defendants he would attempt suicide. This public and overt threat of self-harm was sufficient to place Defendants on notice, whether or not they knew of Plaintiff's mental health history.

Defendants offer the additional argument that as correctional officers, they did not have the training or authority to provide crisis treatment to Plaintiff. In support, Defendants have provided the affidavit of Kelly Renzi, the Pontiac Psychologist Administrator. Ms. Renzi attests that the treatment of inmates in crisis is governed by IDOC Administrative Directive 04.04.102- Suicide Prevention and Intervention and Emergency Services. This Directive provides that if an inmate submits mental or emotional distress or is at risk of self-harm, staff is to immediately notify an MHP on the Crisis Intervention Team. It is then the MHP's responsibility to evaluate the inmate, stabilize and prevent escalation, and to initiate a crisis care treatment plan. Ms. Renzi explains that it is the MHP, not correctional officers, who make the determination to initiate a crisis watch.

The IDOC Defendants point to Plaintiff's deposition testimony stating that an unidentified officer told Defendant Brady that he wished to be seen. They assert that, if this is true,

Defendant Brady would have been on notice of Plaintiff's request and the officers would have no further responsibility in the matter. None of the Defendants, however, claims to have made the report to Defendant Brady, or claims to have witnessed any such exchange between Defendant and the unidentified officer. Defendant Hubert, for example, does not corroborate Plaintiff's claim that it was he who asked the officer to speak with Defendant Brady. Plaintiff, himself, did not directly speak with Defendant Brady and does not claim to have heard any exchange between her and the unidentified officer. Defendant Brady, of course, denies that she received any such notice.

The IDOC Defendants cannot stand on the uncorroborated claim that "someone" told Defendant Baker, to support that they had basically handed-off the Plaintiff's care. This, particularly, as Defendant Brady was busy treating another patient. Defendants, in fact, removed Plaintiff from the area while Defendant Brady was so occupied, taking him from an open area with others present, to an isolated cell without direct observation. The speculative and hearsay statement made by Plaintiff, and cited by the IDOC Defendants, is insufficient to raise as a material issue of fact, that Defendant Brady knew of Plaintiff's request to be seen, relieving the IDOC Defendants of continued responsibility for his well-being.

The Court finds Plaintiff has identified sufficient facts to raise a reasonable inference that the IDOC Defendants knew that Plaintiff was a suicide risk, and failed to take reasonable measures to intervene. The IDOC Defendants' motion for summary judgment is DENIED.

**Qualified Immunity**

The IDOC Defendants claim that, even if their motion for summary judgment is denied, they should be afforded the protection of qualified immunity. The doctrine of qualified immunity generally shields a government official from civil liability if his or her conduct does

not violate clearly-established constitutional or statutory rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding whether qualified immunity applies, a court must determine (1) whether the facts that the plaintiff alleged in his or her pleadings or shown during discovery make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

In this case, Plaintiff clearly had an established right to crisis intervention in response to his threats of suicide. *Smith*, 898 F. Supp. 2d 1057. Further, Plaintiff has identified facts to support that the IDOC Defendants violated that right when they did not call a crisis team member while he was in the holding area. Plaintiff has also identified as a material issue that Defendants were deliberately indifferent when they moved him to 1 Gallery, before he had been seen, and where he could not be easily observed. The IDOC Defendants' Motion, to the extent is raises the defense of qualified immunity, is DENIED with leave to reassert at trial.

**Defendant Brady's Motion for Summary Judgment [ECF 90]**

Defendant Brady asserts that she was not deliberately indifferent to Plaintiff as she was not aware that he was at risk of suicide. Defendant claims that she did not know of Plaintiff's alleged request to be seen, or suicidal ideation, until after his suicide attempt. Defendant indicates that even reviewing the facts in the light most favorable to Plaintiff, it is clear that, at the time Plaintiff requested crisis intervention, she was unavailable, evaluating another patient. Defendant asserts that while she was occupied, Plaintiff was moved to a different cell where he harmed himself, before Defendant could have had an opportunity to see him.

Plaintiff has responded, disputing Defendant's claim that she was unaware of his request and suicide threat. There, he provides a declaration, asserting that he had spoken to Defendant

10

Brady "two different times" regarding his suicidal ideation and request for a crisis team member. This claim, however, is contradicted by Plaintiff's deposition testimony. There, he denied that he spoke with Defendant. [ECF 84-1 p. 16]. Plaintiff testified merely that he called out to Defendant Brady several times, and received no response, though he believes she had heard him. Even this testimony is equivocal, however, as Plaintiff was not sure whether he yelled out that he wanted a crisis team member, that he was suicidal, or whether "might have said" both. [ECF 84-1 [p. 20]. *See Withrow v. Reyes*, 13 CV 9141, 2015 WL 3505012, at *3 (N.D. Ill. June 2, 2015) (plaintiff cannot create an issue of fact with an affidavit that contradicts his sworn deposition testimony).

Here, Plaintiff's deposition testimony was vague and failed to affirmatively establish that he ever, within earshot of Defendant, declared he was suicidal. While Plaintiff makes the additional claim that he yelled out a request for a crisis team member, this alone is not enough to find that Defendant was deliberately indifferent for not responding. *See Collins v. Seeman*, 462 F.3d 757, 760-61 (7th Cir. 2006) (the failure to respond to a request for a crisis team member is not sufficient evidence of deliberate indifference).

Defendant makes the further argument that, even if she were aware of Plaintiff's request, she could not intervene as she was treating another patient. Plaintiff does not dispute this and does not indicate why he believes Defendant should have abandoned the other patient to respond to him. This particularly, as Defendant has pointed out that Plaintiff was secure in a chain-linked holding cell under the observation of correctional staff. Plaintiff, in fact, did not harm himself until the IDOC Defendants moved elsewhere, where he could not be so easily observed.

Plaintiff's has failed to identify a material issue of fact in response to Defendant Brady's motion for summary judgment. Plaintiff cannot establish either that Defendant Brady had actual

11

knowledge that he was at imminent risk of suicide, or that she had an opportunity and failed to intervene. Defendant Brady's motion for summary judgment is GRANTED.

**IT IS THEREFORE ORDERED:**

1. Plaintiff's Motion for Summary Judgment [ECF 79] is DENIED.

2. The Motion for Summary Judgment of Defendants Skeens, Hubert, Torrez and Lindsay [ECF 84] is DENIED.

3. The Motion for Summary Judgment of Defendant Brady [ECF 90] is GRANTED. Defendant Brady is DISMISSED as a party.


9/27/2018                                       s/James E. Shadid
ENTERED                                  JAMES E. SHADID
                                               UNITED STATES DISTRICT JUDGE